UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

UNITED STATES OF AMERICA

    - against -

LUIS GUTIERREZ-HERNANDEZ a/k/a LUIS
GUTIERREZ a/k/a/ LOUIS GUTIERREZ a/k/a
ROBERTO GUITERREZ HIMEN a/k/a LUIS M.
GUITERREZ

               Defendant.

----------------------------------------X

08 Cr. 1335-01 (RWS)

SENTENCING OPINION

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3|26|09
```

**Sweet, D.J.**

        On December 24, 2008, Luis Gutierrez-Hernandez
("Gutierrez-Hernandez" or "Defendant") appeared before the
Honorable Frank Maas and pleaded guilty to one count of illegal
re-entry, in violation of 8 U.S.C. § 1326(a).  For the reasons
set forth below, Gutierrez-Hernandez will be sentenced to time
served and required to pay a special assessment of $100.

**Prior Proceedings**

        Information 08 Cr. 1335 (RWS) was filed in the Southern
District of New York on December 24, 2008.  Count I charges that
from about September 2006 to September 9, 2008, in the Southern
District of New York and elsewhere, Gutierrez-Hernandez, a/k/a

1

"Luis Gutierrez," a/k/a "Louis Gutierrez," a/k/a "Roberto

Guiterrez Himen," a/k/a "Luis M. Guiterrez," being an alien,

unlawfully entered and was found in the United States after being

removed on June 24, 2006, without having obtained the express

consent of the Attorney General of the United States or the

Secretary for the Department of Homeland Security to reapply for

admission.

The same day, Gutierrez-Hernandez appeared before Judge

Maas and allocuted to his criminal conduct as charged.

The Government has presented its position on the

application of the U.S. Sentencing Guidelines ("Guidelines") in a

Pimentel letter, dated December 22, 2008, as follows:

- the applicable Guideline is § 2L1.2(a), which
  designates a base offense level of 8;

- assuming Defendant clearly demonstrates acceptance
  of responsibility to the satisfaction of the
  Government, a two-level decrease in his offense
  level will be warranted under § 3E1.1(a);

- in accordance with the above, the applicable
  Guidelines offense level is 6;

- based upon information available to the U.S.
  Attorney's Office, the defendant has ten criminal
  history points and a Criminal History Category of V;

- based upon the calculations set forth above, at an
  offense level of 6, Defendant's Guideline range is 9
  to 15 months' imprisonment, and the applicable fine
  range is $500 to $5,000.

2

On March 20, 2009, the Court received a letter from
Defendant requesting that the Court depart from the Guidelines
and impose a sentence of time served.

Sentencing is scheduled for March 30, 2009.

## The Sentencing Framework

In accordance with the Supreme Court's decision in
United States v. Booker, 543 U.S. 220 (2005), and the Second
Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d
Cir. 2005), the sentence to be imposed was reached through
consideration of all of the factors identified in 18 U.S.C. §
3553(a), including the advisory Guidelines established by the
United States Sentencing Commission. As the Supreme Court
explained in Gall v. United States, 128 S. Ct. 586 (2007):

> [A] district court should begin all sentencing
> proceedings by correctly calculating the
> applicable Guidelines range. As a matter of
> administration and to secure nationwide
> consistency, the Guidelines should be the
> starting point and the initial benchmark. The
> Guidelines are not the only consideration,
> however. Accordingly, after giving both
> parties an opportunity to argue for whatever
> sentence they deem appropriate, the district
> judge should then consider all of the §
> 3553(a) factors to determine whether they
> support the sentence requested by a party. In
> so doing, he may not presume that the

3

Guidelines range is reasonable. He must make an individualized assessment based on the facts presented.

Id. at 596-97 (internal citations and footnote omitted). Thus, in addition to analysis of the Guidelines, the sentence imposed here results from consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for-

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims

4

of the offense.

18 U.S.C. § 3553(a).  A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not.  See Crosby, 397 F.3d at 111.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 128 S. Ct 558, 570 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a non-Guidelines sentence is warranted in the instant case.

**The Defendant**

The Court adopts the facts set forth in the Probation Department's Presentence Investigation Report ("PSR") with respect to Gutierrez-Hernandez's personal and family history.

**The Offense Conduct**

The following description draws on the PSR.  The specific facts of the underlying conduct are adopted as set forth

5

in that report.

Gutierrez-Hernandez is a citizen of Mexico, and has never been a citizen of the United States. On June 24, 2006, Gutierrez-Hernandez was deported from the United States to Mexico. Upon his removal, the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") took an imprint of his right index finger.

On September 9, 2008, Gutierrez-Hernandez was arrested by the New York City Police Department. As a result of this arrest, on September 26, 2008, Defendant was convicted in Kings County Criminal Court of Criminal Contempt in the Second Degree and sentenced to four months' imprisonment. Gutierrez-Hernandez was incarcerated at Rikers Island from September 11, 2008, until he was taken into ICE custody on December 1, 2008.

On December 10, 2008, Gutierrez-Hernandez was interviewed by ICE. During the interview, he waived his rights under Miranda and stated that he was deported from the United States in 2007; that he last entered the United States approximately two months after his deportation; that he did not apply to the Attorney General of the United States for permission to re-enter the United States; and that after re-entering the

6

United States, he traveled through the Holland Tunnel into New York, New York.

On December 11, 2008, Gutierrez-Hernandez was fingerprinted while in ICE custody. A fingerprint analyst employed by ICE compared the fingerprint impression taken on June 24, 2006, by ICE when Gutierrez-Hernandez was deported from the United States, and the fingerprint impression of Gutierrez-Hernandez taken by ICE on December 11, 2008. ICE concluded that these fingerprints were made by the same person.

## The Relevant Statutory Provisions

The maximum statutory sentence for violation of 8 U.S.C. § 1326(a) is two years imprisonment. Count I therefore constitutes a Class E felony, pursuant to 18 U.S.C. § 3559(a)(5). There is no applicable statutory minimum sentence.

The Court may also impose a term of supervised release of not more than one year, pursuant to 18 U.S.C. § 3583(b)(3).

The maximum fine is $250,000, pursuant to 18 U.S.C. § 3571(b)(3). A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013(a)(2).

7

Gutierrez-Hernandez is eligible for not less than one and no more than five years' probation, pursuant to 18 U.S.C. § 3561(c)(1).  Because the offense is a felony, one of the conditions outlined in 18 U.S.C. § 3563(b) must be imposed as a condition of probation, pursuant to 18 U.S.C. § 3563(a)(2).

**The Guidelines**

The November 1, 2008 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a).

The Guideline for a violation of 8 U.S.C. § 1326(a) is found in §2L1.2, and designates a base offense level of eight.

Gutierrez-Hernandez has shown recognition of responsibility for the offense.  Because of his timely notification of his intention to plead guilty, thus allowing the Government to allocate its resources more efficiently, pursuant to §3E1.1(a), the offense level is reduced by two.

Accordingly, the applicable offense level is 6.

8

On February 9, 2000, Gutierrez-Hernandez was arrested for Criminal Possession of a Controlled Substance in the Seventh Degree. On February 10, 2000, he was convicted in Kings County Criminal Court, Kings County, New York, and sentenced to a one-year term of a conditional discharge. Pursuant to § 4A1.1(c), this conviction warrants one criminal history point.

On May 19, 2000, Defendant was arrested for Attempted Criminal Possession of a Controlled Substance in the Seventh Degree. On May 20, 2000, Gutierrez-Hernandez was sentenced in the Kings County Criminal Court, Kings County, New York, to a one-year term of a conditional discharge. Pursuant to § 4A1.1(c), this conviction warrants one criminal history point.

On or about September 4, 2005, Gutierrez-Hernandez was arrested for operating a motor vehicle while intoxicated. On March 9, 2006, he was convicted in Bronx County Supreme Court, Bronx County, New York, of Driving While Intoxicated—First Offense, and sentenced to a term of 90 days' imprisonment. Pursuant to § 4A1.1(b), this conviction warrants two criminal history points.

On January 27, 2006, Defendant was arrested after being stopped for a traffic violation and observed to be under the

9

influence of alcohol. On May 18, 2006, Gutierrez-Hernandez was convicted in Kings County Criminal Court, Kings County, New York, of Driving While Intoxicated—First Offense, and sentenced to a term of four months' imprisonment. Pursuant to § 4A1.1(b), this conviction warrants two criminal history points.

On September 9, 2008, Gutierrez-Hernandez was arrested for Criminal Contempt—Second Degree. He was convicted on September 26, 2008, in Kings County Criminal Court, Kings County, New York, and sentenced to a term of four months' imprisonment. Pursuant to § 4A1.1(b), this conviction warrants two criminal history points.

Gutierrez-Hernandez committed the instant offense less than two years after his release from custody on May 23, 2006, for the sentence imposed on May 18, 2006. Pursuant to § 4A1.1(e), two points are added to Defendant's criminal history score.

A total of ten criminal history points establishes a Criminal History Category of V, pursuant to the table at Chapter 5, Part A, of the Guidelines.

Based on a total offense level of six and a Criminal

10

History Category of V, the Guidelines range for imprisonment is 9 to 15 months.

The Guidelines range for a term of supervised release is one year, pursuant to § 5D1.2(a)(3).  Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute, pursuant to § 5D1.1(a).  If a sentence of imprisonment of one year or less is imposed, a term of supervised release is not required but is optional, pursuant to § 5D1.1(b).

Because the applicable Guideline range is in Zone C of the Sentencing Table, Gutierrez-Hernandez is not eligible for probation, pursuant to § 5B1.1, Application Note 2.

The fine range for the instant offense is from $500 to $5,000, pursuant to § 5E1.2(c)(3).  Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release imposed, pursuant to § 5E1.2(d)(7).  The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,076.83 to be used for imprisonment, a monthly cost of $301.80 for supervision, and a monthly cost of $1,905.92 for community confinement.

11

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court
also gives due consideration to the remaining factors identified
in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient,
but not greater than necessary," as is required in accordance
with the Supreme Court's decision in Booker, 543 U.S. 220.
Consideration of the § 3553(a), specifically factors (5) and (6),
indicates that the imposition of a non-Guidelines sentence is
warranted.

### The Fast Track Disparity

Section 3553(a)(6) instructs courts to consider "the
need to avoid unwarranted sentence disparities among defendants
with similar records who have been found guilty of similar
conduct." 18 U.S.C. § 3553(a)(6). A number of courts, including
courts in this district, have recognized the unwarranted
sentencing disparities that result from so-called "fast track"
programs for dealing with illegal reentry cases. See, e.g.,
United States v. Miranda-Garcia, No. 6:05-Cr-202-Orl-31DAB, 2006
WL 1208013, at *2 (M.D. Fla. May 4, 2006); United States v.
Ramirez-Ramirez, 365 F. Supp. 2d 728, 731-32 (E.D. Va. 2005);

United States v. Galvez-Barrios, 335 F. Supp. 2d 958, 963 (E.D.
Wis. 2005); United States v. Bonnet-Grullon, 53 F. Supp. 2d 430,
435 (S.D.N.Y. 1999), aff'd, 212 F.3d 692 (2d Cir. 2000). This
Court previously has imposed non-Guidelines sentences in
recognition of the fast-track disparity. See, e.g., United
States v. Evangelista, No. 08 Cr. 172 (RWS), 2008 WL 5057862
(S.D.N.Y. Nov. 26, 2008); United States v. Santos-Nuez, No. 05
Cr. 1232 (RWS), 2006 WL 1409106 (S.D.N.Y. May 22, 2006); United
States v. Austin, No. 05 Cr. 744 (RWS), 2006 WL 305462 (S.D.N.Y.
Feb. 6, 2006); United States v. Santos, 406 F. Supp. 2d 320
(S.D.N.Y. 2005). See also United States v. Seval, 293 F. App'x
834 (2d Cir. 2008) (remanding for resentencing in light of
district court's erroneous view that it did not have discretion
to depart from Guidelines based on fast-track disparity); United
States v. Hendry, 522 F.3d 239, 241 (2d Cir. 2008) (upholding
sentence where district court "thought it could consider" the
absence of a fast-track program, but refused to do so).

In response to the increasing number of illegal reentry
arrests in certain geographical areas, a number of judicial
districts began utilizing fast-track programs to manage charges
brought under section 1326 more efficiently. The programs work
as follows:

> Through charge bargaining or stipulated
> departures, these programs allow a § 1326

13

> offender who agrees to a quick guilty plea and
> uncontested removal to receive a reduced
> sentence.   In the Southern District of
> California, for example, defendants subject to
> 20 year statutory maximums and guideline
> ranges of 70-87 months were allowed to plead
> guilty to an offense carrying a two year
> statutory maximum penalty.   In other border
> districts,  defendants  received  downward
> departures to induce fast pleas. Recently, in
> the PROTECT Act, Congress made fast-track
> programs official, and the Commission then
> enacted a guideline, § 5K3.1, providing for a
> 4 level departure on the government's motion
> pursuant to an early disposition program.

Galvez-Barrios, 355 F. Supp. 2d at 963 (internal citations

omitted). In other words, in districts utilizing fast-track

programs, offenders agree to a quick removal, saving the

Government resources, and in return they receive reduced

sentences.


While fast-track programs may create an efficient

solution to an explosion of illegal reentry cases in border

districts, they nevertheless result in the type of sentencing

disparity cautioned against in section 3553(a)(6).  As the court

in Galvez-Barrios explained: "Because they operate only in

certain districts (typically in southwestern states), an illegal

alien stopped in California or Arizona will receive a lighter

sentence than an alien convicted of the same offense and with the

same record who is found in Wisconsin."  355 F. Supp. 2d at 963.

As the Honorable Lewis A. Kaplan noted, "it is difficult to

imagine a sentencing disparity less warranted than one which
depends upon the accident of the judicial district in which the
defendant happens to be arrested."   Bonnet-Grullon, 53 F. Supp.
2d at 435.  Because the disparity created is of the type
envisioned by section 3553(a)(6), under Crosby it is appropriate
for the Court to exercise discretion to minimize the sentencing
disparity that fast-track programs create.


        Section 3553(a)(5) instructs courts to consider policy
statements issued by the Sentencing Commission in determining
whether a non-Guideline sentence should be imposed.   The
Sentencing Commission itself has expressed serious concern about
the unwarranted disparities that result from fast-track programs.
As the Commission explained:

> The statutory requirement that the Attorney
> General approve all early disposition programs
> hopefully will bring about greater uniformity
> and transparency among those districts that
> implement authorized programs.   Defendants
> sentenced in districts without authorized
> early disposition programs, however, can be
> expected to receive longer sentences than
> similarly-situated defendants in districts
> with such programs.  This type of geographical
> disparity appears to be at odds with the
> overall Sentencing Reform Act goal of reducing
> unwarranted disparity among similarly-situated
> offenders.

U.S. Sentencing Comm'n, Report to Congress:  Downward Departures
from the Federal Sentencing Guidelines 66-67 (2003).   This
acknowledgment by the Sentencing Commission that the existence of

                                15

fast-track programs creates unwarranted disparities in sentencing
militates in favor of imposing a non-Guidelines sentence.

**The Sentence**

In determining the non-Guidelines sentence to be
imposed in this case, it is appropriate to consider how other
courts have approached the fast-track disparity issue.  In this
District, on October 28, 2005, the Honorable Kimba M. Wood
imposed a non-Guidelines sentence based upon the unwarranted
sentencing disparity in illegal reentry cases.  See United States
v. Vernal Mark Deans, 03 Cr. 387 (KMW).  Judge Wood found that
most fast-track illegal reentry jurisdictions on average reduce a
sentence by four offense levels, and accordingly rejected the
Guidelines range of seventy-seven to ninety-six months and
imposed a sentence of fifty-one months.  This Court previously
has utilized the equivalent of a four-level reduction in the
offense level in determining the length of non-Guidelines
sentences.  Santos-Nuez, 2006 WL 1409106 at *6; Santos, 406 F.
Supp. 2d at 329; Linval, 2005 WL 3215155, at *7.

Accordingly, after accounting for the effects of the
fast-track disparity, Gutierrez-Hernandez is more appropriately
sentenced at the equivalent of an offense level of 2.  Under the

16

Guidelines, an offense level of 2 and a Criminal History Category of V result in a range of zero to 6 months.

In imposing the sentence, the Court considers Defendant's criminal history, his motive for illegal re-entry, and the fact that he will face deportation proceedings following his release from custody.  Gutierrez-Hernandez is hereby sentenced to time served.

The fine in this case is waived.  However, a special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

It is so ordered.

New York, NY
March 2 J⁻, 2009

ROBERT W. SWEET
U.S.D.J.

17